UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Case No.: 1:19-cv-01162-PB

SHAWN MURPHY,

    Plaintiff,

vs.

STRAFFORD COUNTY, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS, WILLIAM WRENN, MICHAEL A. ZENK, SERGEANT LEONARD NADEAU, LIEUTENANT DONNA ROY, OFFICER DE SAO JOSE, OFFICER ELIZABETH BAEZ, OFFICER JACQUELIN VALENTINE, and JOHN DOES 1-20,

    Defendants.

## AMENDED COMPLAINT[1]

Plaintiff Shawn Murphy brings this Amended Complaint for damages against Defendants Strafford County, New Hampshire Department of Corrections ("NHDOC"), William Wrenn, Michael A. Zenk, Sergeant Leonard Nadeau, Lieutenant Donna Roy, Officer De Sao Jose, Officer Elizabeth Baez, Officer Jacquelin Valentine, and John Does 1-20.

---

[1] This Amended Complaint is being filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Nevertheless, Mr. Murphy, once again, is reserving his right to file a motion to amend this Amended Complaint in the very near future. He has not yet been able to obtain the identities of the State of New Hampshire employees who committed the violations and torts alleged in this Amended Complaint. As of the time of this filing, despite the fact Mr. Murphy and the undersigned were able to obtain video footage, disciplinary reports, and medical records concerning the incidents that occurred at the Strafford County Department of Corrections, Mr. Murphy and the undersigned have not obtained a complete set of records from the New Hampshire Department of Corrections; rather, they have obtained Mr. Murphy's medical file only, which is approximately 1,000 pages, and are still awaiting receipt of his inmate record. Given its volume, a review of his medical file is not yet complete. Thus, Mr. Murphy and the undersigned have not been able to determine the names of the State of New Hampshire employees involved in the incidents and injuries alleged below that occurred at the New Hampshire Department of Corrections. As soon as Mr. Murphy and the undersigned identify that information, they will promptly file a motion to amend.

## PARTIES

1. Plaintiff Shawn Murphy is an inmate in the New Hampshire Department of Corrections, specifically the New Hampshire State Prison for Men, located at 281 North State Street, Concord, New Hampshire 03302.

2. Defendant Strafford County is a county in the State of New Hampshire with a principal place of business at 259 County Farm Road, Dover, New Hampshire 03820. It operates the Strafford County Department of Corrections ("SCDOC"), a department within Strafford County that has a principal place of business at 266 County Farm Road, Dover, New Hampshire 03820.

3. Defendant New Hampshire Department of Corrections is a department within the State of New Hampshire with a principal place of business at 281 North State Street, Concord, New Hampshire 03302.

4. Defendant William Wrenn was the Commissioner for the New Hampshire Department of Corrections at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

5. Defendant Michael A. Zenk was the Warden for the New Hampshire Department of Corrections at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

6. Sergeant Leonard Nadeau was an employee of Strafford County at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

7. Lieutenant Donna Roy was an employee of Strafford County at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a

resident of New Hampshire.

8. Officer De Sao Jose was an employee of Strafford County at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

9. Officer Elizabeth Baez was an employee of Strafford County at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

10. Officer Jacquelin Valentine was an employee of Strafford County at the time of the incidents alleged in this Amended Complaint and, upon information and belief, is a resident of New Hampshire.

11. Defendant John Does 1-20 were, at all relevant times, employees of NHDOC. Any and all identifiable individuals, through discovery or otherwise, are sued in their individual and official capacities.

12. The above-referenced employees and John Does 1-20 were acting within the scope of their employment at the times of the incidents and events below giving rise to this cause of action. All of the Defendants above have acted and continue to act under the color of law of the State of New Hampshire at all times relevant to this Complaint.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (jurisdiction over claims arising under federal civil rights statutes).

14. This Court has personal jurisdiction over Defendants because they are located and conduct business in New Hampshire.

15. This court also has pendant/supplemental jurisdiction under 28 U.S.C. § 1367(a) over any state law claims herein.

16. Venue is proper in this District because all the parties conduct business in this District, a substantial number of the acts alleged occurred in New Hampshire, and the Defendants referenced in this Complaint and other witnesses reside in New Hampshire.

## FACTUAL BACKGROUND

### A. The Incident

17. Video footage obtained from the SCDOC shows that, on November 16, 2016, Mr. Murphy was pacing in the common area outside his cell (in Unit D) requesting assistance. Mr. Murphy suffers from mental health issues and was peacefully requesting that he be allowed to speak with a mental health counselor.

18. He exhibited no aggressive behavior or tendencies and was simply pacing back and forth appearing to speak aloud. (There is no audio in the video.)

19. After a couple of minutes, five correctional officers (Sergeant Nadeau, Lieutenant Roy, Officer Baez, Officer Jose, and Officer Valentine) approached him in an intimidating manner and directed him back to his cell. Mr. Murphy complied, turned away, and walked back through the hallway to his cell. The officers followed him there.

20. When Mr. Murphy entered his cell, and while his back was facing the officers and the cell door began to close, Sergeant Nadeau sprayed Mr. Murphy with oleoresin capsicum spray, and then he (Sergeant Nadeau) and Lieutenant Roy entered the cell, grabbed Mr. Murphy, and pulled him and threw him on the floor in the hallway several feet in front of his cell door. The remaining officers then surrounded him and savagely beat him, jumped on him, and restrained him. During this onslaught, Sergeant

Nadeau yelled, "Someone tase him!" Officer Baez reached for the conducted electrical weapon in Sergeant Nadeau's holster and deployed the device towards Mr. Murphy's back. Mr. Murphy felt his left leg "snap" and then "pop" while the officers were on top of him. He screamed, "My leg is fucked up! You fucking broke my leg!"

21. The medical records demonstrate the officers fractured Mr. Murphy's left mid-fibula. The officers secured restraints to his arms. While he was face down on the floor in restraints, one of the officers deployed a taser into his back. Then one of the officers stated, "Okay, okay. Enough. Enough." The officers pulled Mr. Murphy off the floor and forced him to walk – on his fractured leg with no apparatus to stabilize it – to the medical department. While walking Mr. Murphy exclaimed repeatedly, "My leg is fucked up!" The officers ignored his cries.

22. Mr. Murphy was seen at the medical department at SCDOC. Two days later, he was transported to the New Hampshire State Men's Prison in Concord, NH (NHDOC). The medical team at the NHDOC delayed providing him with appropriate care: they observed Mr. Murphy's leg was swollen, bruised, and wrapped. They denied, however, that it was fractured without obtaining verification from the SCDOC. That verification took nearly *four days* to receive. Mr. Murphy was not provided with crutches or a cast until *December 20*, 2016.

23. Mr. Murphy was treated for his injuries through various medical procedures while he was housed with the general population in the prison for the next several months. Crutches, leg braces, and similar apparatuses are not permitted in that area. As a result, he continued to be denied appropriate care. After seven months – in approximately June 2017, medical scans showed Mr. Murphy's leg was still fractured and had not healed. His

5

leg was not surgically repaired until July 2017.

24. Now, after nearly three years, Mr. Murphy continues to experience persistent and debilitating pain in his leg.  He can hardly move his left foot without pain.  He had screws surgically inserted to support the bone, but this remedy has failed to alleviate his pain and disability.  Mr. Murphy formerly worked in flooring installation for many years.  After the conclusion of his sentence, he will not be able to work in that trade or similar trades requiring the use of his leg.

**B.    The Medical Records**

    **i.    SCDOC Nursing Station, November 16, 2016**

25. Mr. Murphy was seen after the incident in the SCDOC nursing station on November 16, 2016.  Taser prongs were removed from his lower back.  ***<u>Ice was applied to his ankle</u>***.

26. This treatment was inadequate for the injury he suffered.

    **ii.    Wentworth Douglass Hospital, November 16, 2016**

27. Mr. Murphy was transported to the emergency department of Wentworth Douglass Hospital.  The attending physician was Samuel Trotzky, M.D.  At the time, he rated his pain a 9 on a scale of 1 to 10.  X-rays were obtained and revealed a displaced spiral fracture of the left midshaft distal fibula.  He was placed in a splint and given a referral for orthopedic management.

    **iii.    Dartmouth Hitchcock Medical Center, December 16, 2016 – August 2, 2019**

28. On December 16, 2016, one month after his injury, Mr. Murphy was finally transported to Dartmouth Hitchcock Medical Center and seen at a consultation with David

Molind, P.A. He reported continued pain since November 16 and the use of crutches. Moderate edema was noted around the medial malleolus. Imaging was obtained and revealed a comminuted fracture of the midshaft of the fibula, as well as some widening of his ankle mortis. He was diagnosed with a Maisonneuve fracture of his lower left extremity. There was also a question of the possibility of a nondisplaced avulsion fracture. He was instructed to keep the cast on and follow up in two weeks.

29. Mr. Murphy was not brought back as instructed, but rather seen at a follow-up appointment on January 25, 2017, ***five weeks*** after his consult with Dr. Molind. He continued to report pain and tenderness, and Dr. Molind opined that he had been incompletely treated for his injuries. He was provided an ASO-type brace for his ankle and was given a referral to physical therapy and instructed to return in one month.

30. Mr. Murphy was not brought back by officers until April 7, 2017 for follow up, at which time he reported that prison officials did not allow him to wear his ASO-type brace as recommended by Dr. Molind. Additional x-rays were obtained that continued to reveal a Maisonneuve-type fracture, as well as widening of his syndesmosis with some lateral displacement of the talus. Surgical intervention was recommended at that time, as was a CT scan of his ankle, which was obtained on June 1, 2017 at Catholic Medical Center.

31. Mr. Murphy was seen again at Dartmouth Hitchcock Medical Center on June 8, 2017 by Scott Devanny, M.D.. At that time, he continued to experience pain and reported walking with a limp. Again, he reported being unable to wear his brace due to orders from the prison. He was scheduled to undergo surgical intervention to repair his ankle, which occurred on June 19, 2017.

32. Mr. Murphy was seen at a post ORIF follow-up on August 21, 2017 and repeat x-rays were ordered. He was noted to have some Achilles tendonitis.

33. Mr. Murphy presented at follow-ups on October 23, 2017, February 15, 2018, and October 5, 2018. At these appointments, further x-rays were obtained, a pain management consult was discussed, as well as physical therapy and instructed to follow up as needed.

34. He followed up again on May 9, 2019 and August 2, 2019. He continues to experience pain and continues treating for his injures.

    iv.    **Catholic Medical Center, June 1, 2017**

35. On June 1, 2017, Mr. Murphy underwent an ankle CT scan at Catholic Medical Center.

    v.    **Concord Ambulatory Surgical Center, July 19, 2017**

36. On July 19, 2017, Mr. Murphy underwent a left fibular open reduction and internal fixation surgery to repair his ankle, which was performed by Dr. Devanny at Concord Ambulatory Surgical Center. Plates and screws were used to repair the fracture.

    vi.    **Health First Family Care Center, September 23, 2019**

37. Mr. Murphy presented with continued lower left leg pain. Steroid injections administered at the prison had no effect. The pain was found to be radiating from his lower back to his left buttock. He was referred to an orthopedic specialist for further treatment.

38. Mr. Murphy's medical costs, to date, total over $15,505.96.

**C.**    **The Strafford County Disciplinary Reports**

39. One of the correctional officers involved in the incident (Sergeant Nadeau)

8

drafted three "Disciplinary Board Forms" the following day, November 17, 2016, concerning the incident. Incredibly, these reports accuse *Mr. Murphy* of, among other things, "assault," "threat of assault," "attempting to tackle" and "headbutt" Sergeant Nadeau, "refusing to lock down when ordered to do so," and "causing a back up to be called resulting in several staff members being contaminated with O.C. spray and a transport to WDH."

40. Other reports concerning the incident similarly accuse Mr. Murphy of refusing to lock down, "tensing" his body, and blocking the doorway to his cell to prevent the officers from closing the door as he walked into it.

41. These reports exacerbate, rather than clarify, the officers' conduct. They contain critical discrepancies that demonstrate the officers' attempt to conceal their misconduct following the incident.

42. First, the video footage demonstrates Mr. Murphy did not assault, let alone attempt to "headbutt," anyone. He merely requested help, peacefully walked back to his cell when instructed to do so, and entered his cell upon returning there. Rather, the footage shows the only assault that occurred commenced when the officers yanked Mr. Murphy out of his cell and threw him to the floor and beat him.

43. Second, the video footage does not support the reports' assertion that Mr. Murphy refused to lock down. As described above, he walked back to and entered his cell. Immediately upon entering the cell, Sergeant Nadeau and Lieutenant Roy entered behind him and pulled Mr. Murphy out of the cell. There could not have been an instruction to lock down, nor – in the time frame depicted in the video footage – was Mr. Murphy provided with a chance to comply with such an instruction if given.

44. Third, the disciplinary reports omit the fact that Mr. Murphy was tased. Mr. Murphy's medical records state that prongs had to be pulled out of his back. Sergeant Nadeau makes no mention of this fact in his disciplinary reports. (Other officers, however, disclosed this fact in their incident reports.)

45. These misrepresentations clearly demonstrate an intent and coordinated attempt to conceal the truth and the officers' misconduct.

D. **The Officers' Misconduct**

46. The officers' beating of Mr. Murphy, fracture of his leg, and discharge of a taser gun were unnecessary to protect their safety. First, Mr. Murphy was not engaged in any misconduct: he was merely pacing back and forth and requesting assistance, and he walked back to and entered his cell when instructed to do so. Second, there were *several* officers at the scene; Mr. Murphy – who is not an imposing individual by any stretch of the imagination – was significantly outnumbered. Third, Mr. Murphy's act of turning away from the officers and walking back to and into his cell before the officers' first use of force and Mr. Murphy's position on the ground before he was tased demonstrated he was submissive to and compliant with the officers' commands. The use of any kind of force, let alone the fracture of his leg and the use of a taser gun, was unnecessary.

47. In addition, the officers' actions contradict the Taser ™ manufacturer's operating manual instructions. Those instructions state an officer should "[c]ease force once [the] subject surrenders or is captured or controlled," and that an "[e]motionally disturbed person (EDP) or mentally ill alone does not indicate immediate threat." Given the facts the officers were aware of Mr. Murphy's mental condition, Mr. Murphy was requesting assistance, and Mr. Murphy never posed any physical threat to the officers,

especially once he was subdued on the ground, the officers should have never displayed any force, fractured his leg, or discharged a taser.

48. Accordingly, the officers' assault of Mr. Murphy, fracture of his leg, and use of a taser constituted excessive force under 42 U.S.C. § 1983 and violated Mr. Murphy's constitutional rights. In addition, their conduct is actionable under state common law theories such as assault, battery, and negligence.

**E.   Mr. Murphy's Damages**

49. As described in part above, the officers' actions caused Mr. Murphy extensive pain, suffering, and emotional distress and mental anguish. Mr. Murphy is entitled not only to significant compensatory damages within the jurisdictional limits of this Court, but also *punitive* damages, and recovery of his attorney's fees and costs.

**COUNT I**
**Use of Excessive Force**
**(42 USC § 1983)**
**(Mr. Murphy v. Strafford County, Sergeant Nadeau, Lieutenant Roy, Officer Baez, Officer Jose, and Officer Valentine)**

50. Mr. Murphy incorporates each and every allegation made in the Paragraphs above as if fully set forth herein.

51. 42 U.S.C. § 1983 is a federal law that permits lawsuits for violations of constitutional rights.

52. The Defendants above acted under color of law of the state of New Hampshire.

53. Under 42 U.S.C. § 1983, every person acting under color of state law who deprives another person of his or her constitutional rights is liable at law and in equity.

54. As described above, the Defendants above, while acting under color of state

law, deprived Mr. Murphy of rights secured by the Fourteenth Amendment to the U.S. Constitution, by using excessive force on November 16, 2016, without provocation and without legitimate penal justification, and they failed to stop the unprovoked and unjustified excessive use of force against Mr. Murphy.

55. As a direct and proximate result of these acts of excessive force, Mr. Murphy has suffered serious and ongoing physical and psychological injuries.

56. This conduct was willful and exhibited a flagrant disregard for Mr. Murphy's federally-secured due process rights. Accordingly, these Defendants are liable to Mr. Murphy under 42 U.S.C. § 1983.

## COUNT II
### Deliberate Indifference to Medical Needs
### (42 U.S.C. § 1983)
### (Mr. Murphy v. All Defendants)

57. Mr. Murphy incorporates each and every allegation made in the Paragraphs above as if fully set forth herein.

58. As described above, the Defendants above failed to ensure that Mr. Murphy received prompt and adequate medical care after the injuries he sustained on November 16, 2016.

59. These actions exhibited deliberate indifference to Mr. Murphy's medical needs, were performed under color of state law, and violated Mr. Murphy's rights under the Fourteenth Amendment to the U.S. Constitution.

60. As a direct and proximate result of these actions in failing to ensure that Mr. Murphy received prompt and adequate medical care, Mr. Murphy was subjected to increased pain and the threat of serious physical injury.

61. This conduct was willful exhibited a flagrant for Mr. Murphy's federally-secured rights. Accordingly, these Defendants are liable to Mr. Murphy under 42 U.S.C. § 1983.

## COUNT III
### Intentional Infliction of Emotional Distress
### (Mr. Murphy v. All Defendants)

62. Mr. Murphy incorporates each and every allegation made in the Paragraphs above as if fully set forth herein.

63. Defendants, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to Mr. Murphy by the use of excessive force and their deliberate indifference to his medical needs.

64. The conduct above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

65. As a result of this conduct, Mr. Murphy has suffered damages in the form of extreme mental anguish and severe depression, and he has suffered a deterioration of his physical and mental well-being.

## COUNT IV
### Negligent Infliction of Emotional Distress
### (Mr. Murphy v. All Defendants)

66. Mr. Murphy incorporates each and every allegation made in the Paragraphs above as if fully set forth herein.

67. Defendants negligently caused severe emotional distress to Mr. Murphy by the use of excessive force and their deliberate indifference to his medical needs.

68. Defendants knew or should have known this conduct would cause Mr. Murphy to suffer severe emotional distress.

69. As a result of this conduct, Mr. Murphy has suffered damages in the form of extreme mental anguish and severe depression, and he has suffered a deterioration of his physical and mental well-being.

WHEREFORE, Mr. Murphy respectfully prays for judgment against Defendants and the following remedies:

    A. Compensation for lost income, including lost future income;

    B. Compensation for emotional distress and injury;

    C. Enhanced compensatory damages;

    D. Punitive damages;

    E. Pre- and post-judgment interest;

    F. Recovery of Mr. Murphy's reasonable attorney's fees and expenses;

    G. Any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims so triable.

SHAWN MURPHY,

By His Attorneys,

FOJO LAW, P.L.L.C.

Dated: January 30, 2020

    /s/ Robert M. Fojo
Robert M. Fojo (#19792)
264 South River Road, Suite 464
Bedford, NH 03110
Direct: (603) 473-4694
rfojo@fojolaw.com

TEALE LAW, P.L.L.C.

*/s/ Charles C, Teale*
Charles C. Teale (#19888)
1000 Elm Street, Suite 803
Manchester, NH 03101
Tel: (603) 935-7425
cteale@tealelaw.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF on January 30, 2020. I also certify that this document is being served this day on all counsel of record via transmission of Electronic Filing generated by CM/ECF.

*/s/ Robert M. Fojo*
Robert M. Fojo
