UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Case No.: 19-cv-1162-PB

SHAWN MURPHY,

    Plaintiff,

vs.

STRAFFORD COUNTY, SERGEANT LEONARD NADEAU, LIEUTENANT DONNA ROY, OFFICER DE SAO JOSE, OFFICER ELIZABETH BAEZ, OFFICER JACQUELIN VALENTINE, SCOTT J. MARSHALL, JOHN S. MORIN, K. LACASSE, GILBERT F. WILKINS, BERNADETTE M. CAMPBELL, SARAH M. PROVENCHER, CYNTHIA A DOMENICI, DONNA J. DUFRESNE, and JOHN DOES 1-20,

    Defendants.

## PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER

Plaintiff Shawn Murphy responds to the Court's January 13, 2022, Show Cause Order (Doc. 58):

Federal Rule of Civil Procedure 15(c)(1)(A) permits the relation back of Mr. Murphy's claims against the individual Strafford County Defendants. As the Court notes, "RSA 514:9 (2007) authorizes a trial court to permit a substantive amendment to pleadings 'in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice; but the rights of third persons shall not be affected thereby.'" *Sharifova v. Riley*, No. 2011-0755, 2012 N.H. LEXIS 160, at *2-3 (Nov. 2, 2012). The New Hampshire Supreme Court has "held that RSA

514:9 permits liberal amendment of pleadings unless the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence." *Id.* at *3. In *Lewis v. Hines*, 81 N.H. 24 (1923), the Court stated "the real question is not the power of the court to make the order, but what the effect of the amendment would be if allowed." *Id.* at 26. "The crucial issue . . . is whether [the defendant] had actual notice of the lawsuit." *Sharifova*, 2012 N.H. LEXIS 160, at *5; *Bonnvie v. Beaulieu-Lindquist Real Estate*, No. 2006-0047, 2007 N.H. LEXIS 301, at *6 (Mar. 13, 2007).

For example, in *Dupuis v. Smith Properties, Inc.*, 114 N.H. 625 (1974), the Court reversed the trial court's denial of the plaintiff's motion to substitute the name of the intended defendant after the expiration of the statute of limitations. *Id.* at 627. The Court held "the crucial fact . . . is that of actual notice to the intended defendant prior to the expiration of the statute of limitations." *Id.* at 629. "Amendment may be allowed after the expiration of the statute of limitations where an intent to sue the correct party is apparent." *Id.* In *Dupuis*, the plaintiff sued the wrong corporate entity but designated the correct trade name used by the defendant he intended to sue. *Id.* at 626-27. The Court held the plaintiff should have been allowed to amend to add the intended defendant because the defendant "would not be prejudiced by the amendment." *Id.* at 629-30. The Court reasoned "the presence of the trade name in the writ manifested his intent to sue the registrant of the trade name," and the intended defendant, therefore, had "actual notice" of the lawsuit despite its informality. *Id.* at 629. "The actual notice . . . in *Dupuis* was not service of the writ but information the owner of the intended corporate defendant received from his office manager regarding the accident, which occurred before he purchased the company, and the writ's allegations when it was first filed." *Bonnvie*,

2

2007 N.H. LEXIS 301 at *6. Not allowing the amendment would have resulted in potential injustice and prejudice to the plaintiff." *Dupuis*, 114 N.H. at 628.

In *McMullen v. Lamoureux*, 2009 N.H. Super. LEXIS 6 (Rockingham County Super. Ct. Nov. 17, 2009), the superior court granted the plaintiff's motion to amend her complaint after the statute of limitations had expired to name the correct defendant (the driver of a motor vehicle in a personal injury case). *Id.* at *10. The plaintiff sued Donald L. Lamoureux in connection with the motor vehicle accident, but Donald was not the driver; rather, the driver was Donald's wife, Amelia Lamoureux. *Id.* at *1. The superior court noted [t]he New Hampshire Supreme Court has shown willingness to allow the naming of a new defendant by amendment, though after the expiration of the applicable statute of limitations, in circumstances where the added, or substituted, defendant had actual timely notice of the action and understanding as well that the action was really oriented to being pursued against him/her." *Id.* at *5 (citing *Dupuis v. Smith Props., Inc.*, 114 N.H. 625 (1974)). The superior court similarly noted the Court has shown an "unwillingness to allow a substitution of a new defendant, after the passage of the pertinent period of limitations, where the initial writ contained no suggestion of any intent to sue the sought new defendant." *Id.* at *6. The superior court ultimately allowed the amendment because "Amelia actually received the timely service of the lawsuit, and then knew that a suit had been instituted that concerned the motor vehicle incident in which she had been the driver. The content of the writ reflected an intent to sue the driver of the Lamoureux motor vehicle, and Amelia certainly then had reasonable basis to understand, and the record reflects that she did have some understanding, that the suit had mistakenly named her husband even though he had not been the driver. . . . Thereafter, and before the expiration of the period of limitations, Amelia had awareness that Donald was moving along to, among other things, respond to interrogatories

3

in the case, which suggested he was the driver, when they both knew he had not been the driver." *Id.* at *7-*8.

Here, there is no question the individual Strafford County Defendants were not prejudiced by the amendment to Mr. Murphy's Complaint and had actual notice of this lawsuit. The original Complaint (Doc. #1) named the "Strafford County Department of Corrections." *See* Doc. 1 at 1. It alleges the specific date (November 16, 2016) on which the incident occurred **_and_** references and describes video footage that portrays those events. Doc. 1 ¶ 10. The Complaint – relying on that video footage – alleges "several correctional officers" (identifying **_seven_** such officers ("John Does 1-7")) "approached [Mr. Murphy] in an intimidating manner and directed him back to his cell." *Id.* ¶ 12. The Complaint alleges "one of the officers entered the cell, grabbed Mr. Murphy, and pulled him and threw him on the floor in the hallway." *Id.* ¶ 13. It explains "[t]he remaining officers then surrounded him and savagely beat him, jumped on him, and restrained him." *Id.* Defendants Roy, De Sao Jose, Baez, and Valentine have all since conceded that they surrounded Mr. Murphy during this incident. *See* Doc. 45-1 at 4. "Mr. Murphy felt his leg 'snap' and then 'pop' while the officers were on top of him." Doc. 1 ¶ 12. The Complaint also references the fact that "one of the officers deployed a taser into [Mr. Murphy's] back" while he was face down on the ground." *Id.* Ms. Baez has since conceded she was the officer who tased Mr. Murphy, and all of the Defendants concede the "ECD prongs" were "removed from his lower back." Doc. 45-1 at 4-5.

The Complaint also references three disciplinary reports prepared the following day, November 17, 2016. *Id.* ¶ 32. It addresses one of those reports prepared by "[o]ne of the correctional officers involved in the incident (a 'Sergeant Nadeau,' hereinafter 'John Doe 1')" and identifies the information provided in that report. *Id.* That information closely reflects the

4

allegations above concerning the Defendants' assault of Mr. Murphy. *Id.* The "Sergeant Nadeau" referenced in that allegation is Defendant Leonard Nadeau. Indeed, Mr. Nadeau concedes he "delivered a closed fist strike to Murphy's lower abdomen" and references other features of the assault. *See* Doc. 45-1 at 3-4.

The information above was communicated to Strafford County's counsel nearly three weeks before the lawsuit was filed. In a letter dated November 1, 2019 to Strafford's counsel, the undersigned counsel's then-co-counsel communicated the exact same facts that were included in the Complaint and provided the various records he had obtained. *See* Declaration of Charles C. Teale ("Teale Dec.") ¶ 6 & Exhibit A (11/1/2019 Letter). Like the original Complaint, that letter references "Sergeant Nadeau" and his preparation of a disciplinary report concerning the incident. *Id.* & Ex. A at 5. That letter also references "Lieutenant Roy" and her involvement in the incident. *Id.* & Ex. A at 2. The "Lieutenant Roy" referenced therein is Defendant Donna Roy.

The undersigned's discussion with – and provision of specific information to – Strafford's counsel did not begin on November 1, 2019; rather, the undersigned's communication with Strafford's counsel began many months earlier. For example, Strafford's counsel notified the undersigned on April 5, 2019, that he had possession of the video footage concerning the incident (referenced above and in the parties' summary judgment filings). *See* Teale Dec. ¶ 8 & Exhibit C. On April 12, 2019, Strafford's counsel also recounted his client's version of the incident depicted in the video. *Id.* That explanation also includes alleged events that are not clearly depicted in the video and, thus, implies Strafford's counsel discussed the incident with the individual Defendants who were involved. The undersigned also informed Strafford's counsel on April 15, 2019, of the fact that Mr. Murphy was tasered during the

5

incident.  *Id.*  On April 19, Strafford's counsel wrote to the undersigned concerning that portion of the incident and disputed whether or not Mr. Murphy was hand-cuffed when he was tasered.  Teale Dec. ¶ 7 & Exhibit B.  His explanation, again, concerns an event that is not clearly depicted in the video and implies he discussed it with the individual Defendant involved in the incident (Baez).  *See id.*  During these communications, the undersigned repeatedly requested all information concerning the incident, including all reports and any other video footage.  Teale Dec. ¶¶ 7-8 & Ex. B, C.  On September 26, 2019, the undersigned again inquired about the tasering of Mr. Murphy as well as the disciplinary reports recounting the incident.  Teale Dec. ¶ 7 & Ex. B.

Strafford's counsel would later acknowledge receipt of the undersigned's November 1 letter and settlement demand on November 7, 2019, and explain a resolution was not feasible at that time.  Teale Dec. ¶ 9 & Ex. D.

Like the named Defendants in *Dupuis* and *McMullen*, the amendment of Mr. Murphy's Complaint to include the individual Strafford County Defendants was appropriate and did not prejudice them.  Given the specificity of the events described in the November 1 Letter and the original Complaint and in the undersigned's communications with Strafford's counsel dating back to early 2019, including clear references to Defendants Nadeau and Roy and specific conduct undertaken by other individual Defendants, all of the individual Defendants knew or should have known that that a lawsuit was being commenced against them as the correctional officers involved in the November 16, 2016 incident involving Mr. Murphy.  The content of the Complaint clearly reflected an intent to sue those officers.  Indeed, footnote 1 on page 1 of the Complaint states: "Mr. Murphy reserves the right to amend this Complaint, either as of right or by motion, ***when he is able to obtain the identities of the correctional officers and State and***

***County employees who committed the violations and torts alleged in this Complaint***.  As of the time of this filing, despite the fact Mr. Murphy and the undersigned were able to obtain video footage, disciplinary reports, and medical records concerning the incidents and injuries alleged in this Complaint, ***Mr. Murphy and the undersigned have not been able to determine the names of the correctional officers and other State and County employees involved in those incidents and injuries.  The Defendants have also not provided those names to Mr. Murphy***."  Doc. 1 at 1 n.1.  (Indeed, Strafford County never provided the names of the individual Defendants before the original Complaint was filed and are now attempting to benefit from that strategic non-disclosure.)  Accordingly, the individual Strafford County Defendants certainly had a reasonable basis to understand that the suit was directed at them.  They had actual notice of this lawsuit, and prohibiting Mr. Murphy to proceed against them would work an injustice against him and his ability to prosecute these claims.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | SHAWN MURPHY, |
|  | By His Attorneys, |
|  | TEALE LAW, P.L.L.C. |
| Dated:  January 27, 2022 | */s/ Charles C. Teale* |
|  | Charles C. Teale (#19888) |
|  | 1000 Elm Street, Suite 803 |
|  | Manchester, NH 03101 |
|  | Tel: (603) 935-7425 |
|  | cteale@tealelaw.com |

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF on January 27, 2022. I also certify that this document is being served this day on all counsel of record via transmission of Electronic Filing generated by CM/ECF.

*/s/ Charles C. Teale*
Charles C. Teale
