UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Shawn Murphy</u>

    v.                                        Case No. 19-cv-1162-PB
                                                          Opinion No. 2022 DNH 050

<u>Strafford County et al.</u>

### MEMORANDUM AND ORDER

    Shawn Murphy suffered a leg fracture when prison guards at the Strafford County Department of Corrections allegedly assaulted him.  Murphy claims that he was later denied adequate medical care for his leg when he was transferred to the New Hampshire Department of Correction ("NHDOC") to serve a state sentence.  Seeking to recover damages, Murphy sued more than a dozen county and state defendants.  In prior orders, I dismissed all claims except his individual capacity claims against two NHDOC employees, Bernadette Campbell and Cynthia Domenici, alleging inadequate medical care in violation of the Eighth Amendment and intentional and negligent infliction of emotional distress.  Campbell and Domenici now move for summary judgment.  I agree with defendants that the record cannot support a finding that they were deliberately indifferent to Murphy's medical needs.  Defendants have also demonstrated their entitlement to official immunity on the state law claims.  Accordingly, I grant their motion in full.

## I.   BACKGROUND

Murphy arrived at the NHDOC with a broken leg in November 2016.  His leg was put in a cast the following month.  In February 2017, an external orthopedist gave Murphy a leg brace and recommended physical therapy.

On March 20, Murphy submitted an inmate request slip, complaining that his leg was painful and deformed, that his brace had been confiscated, and that he was not getting physical therapy.  Doc. No. 62-4.  Three days later, Murphy submitted a second request slip.  He wrote that his leg brace had been returned to him in the interim, but he still found it painful to walk.  Murphy added that he had inquired about physical therapy during multiple sick call rounds to no avail.  Doc. No. 62-5.

Campbell, the Deputy Administrator of Medical and Forensic Services at the NHDOC, received both request slips.  Upon reviewing Murphy's medical records, Campbell determined that he did not have a necessary referral for physical therapy from an in-house provider and ascertained that the likely reason was his then-current recuperation from brain injuries.  She also confirmed that Murphy had been moved to the infirmary, where he had access to healthcare staff who could refer him for physical therapy if necessary, and that he had a follow-up orthopedic appointment scheduled for April 17.  See Doc. No. 62-2, ¶¶ 11-26.  Campbell responded to Murphy on March 28, writing on the first slip, "No current PT services.

2

Please follow up [at] sick call for any issues." Doc. No. 62-4. Campbell later explained that she made this statement to inform Murphy that he lacked a necessary referral for physical therapy. See Doc. No. 62-2, ¶ 28. On the second slip, Campbell reiterated that Murphy should raise his issues during sick calls. See Doc. No. 62-5. Campbell had no other interactions with Murphy.

Murphy left the infirmary at some point after Campbell sent her replies. He submitted another inmate request slip on May 7, complaining that he could not bear any weight on his leg because his ankle was swollen, deformed, and not healing correctly. See Doc. No. 62-7. Murphy added that he had trouble getting on the top bunk and that he had not gotten "a straight answer" from nurses at sick calls when he complained about those issues. Id.

Domenici, the NHDOC Nurse Case Manager, received Murphy's request slip the following day. She reviewed Murphy's medical records and determined that he had two external medical appointments for his leg injury scheduled for the following month -- a CT scan on June 2 and an orthopedic consultation on June 8. See Doc. No. 62-6, ¶¶ 10-13. But Domenici could not inform Murphy about his upcoming appointments because the prison's safety and security practices preclude telling inmates in advance that they will be making visits outside the prison. Id. ¶ 14. Instead, because Murphy had complained about his difficulty using the top bunk, Domenici wrote back to him on May

3

8 that she was extending his bottom bunk privileges for two months.  Id. ¶¶ 16-17; Doc. No. 62-7.

About three weeks later, on May 31, Murphy wrote another request slip.  He complained that his leg brace had been taken from him and that it hurt to put any weight on his leg.  He also inquired about having an operation on his leg, noting that his orthopedist had discussed that option in April after new x-rays had shown that Murphy's ankle was "drastically out of place." Doc. No. 62-8.  Murphy added that he was not getting physical therapy, that his prescription for Naproxen, a pain medication, had expired, and that he was reporting his concerns at sick calls "daily/weekly."  Id.

This request was received in the medical records department on June 1 and forwarded to Domenici at some point thereafter. When Domenici received Murphy's request, she either remembered or again confirmed that he had a scheduled CT scan and an orthopedic consultation within a few days.  She still could not inform Murphy about those appointments because of the prison's protocol, so she decided to await their outcome.  Doc. No. 62-6, ¶¶ 18-22.  When Domenici learned that Murphy had been referred for surgery and physical therapy following those visits, she responded to his request slip on June 15 with a note that said, "Being admitted to [the infirmary] today."  Doc. No. 62-8; see Doc. No. 62-6, ¶¶ 23-29.  That day, Murphy was admitted to the

4

infirmary, received crutches, and was seen by a physical therapist. He remained under observation and received treatment in the infirmary for several weeks until his surgery and for several weeks thereafter. See Doc. No. 62-6, ¶¶ 32-34.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a

5

trier of fact could reasonably resolve that issue in [his] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

### III. ANALYSIS

Defendants contend that Murphy cannot prevail on his Eighth Amendment claims because no reasonable jury could find that they were deliberately indifferent to his medical needs.[1] Defendants also maintain that they are entitled to official immunity on the state law claims because the facts do not support a finding that they behaved in a wanton or reckless manner. I address the two sets of claims in turn.

**A. Eighth Amendment Claims**

Because Murphy was a convicted inmate when his claims arose, his § 1983 claims for constitutionally inadequate medical

---

[1] In the alternative, defendants argue that I should dismiss his Eighth Amendment claims because Murphy has failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Because I conclude that defendants are entitled to summary judgment on the merits, I need not resolve the exhaustion issue.

6

care are rooted in the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  An inmate alleging constitutionally inadequate medical care must show that prison officials displayed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This standard has both objective and subjective components.  Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018).  The objective component requires the plaintiff to prove that he had a serious medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (cleaned up).  Under the subjective component, the plaintiff must prove that the defendant had "a sufficiently culpable state of mind . . . that amounts to deliberate indifference to [his] health or safety." Zingg, 907 F.3d at 635.  "The obvious case would be a denial of needed medical treatment in order to punish the inmate." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).  But "wanton" or criminal recklessness in the treatment provided will also suffice, which requires a showing that the defendant had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Zingg, 907 F.3d at 635 (cleaned up).  Such a showing can be made by proving

7

that the defendant provided medical care that was "so inadequate as to shock the conscience." Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) (cleaned up).  In other words, the care must be "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (cleaned up).

When defendants are sued in their individual capacities under § 1983, their liability "must be gauged in terms of their own actions." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011) (cleaned up).  Thus, Eighth Amendment claims against individual defendants are triable when there is sufficient evidence from which a jury could find "that each . . . defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that each defendant did, in fact, draw the inference." Id. (cleaned up).

Defendants contend that Murphy's claims fail on the subjective component of the Eighth Amendment test because the record does not support his assertions that they refused to provide him essential care.  I agree.

Campbell's handling of Murphy's March 2017 inmate request slips did not evince deliberate indifference to his health.  Murphy initially requested the return of his leg brace and physical therapy but within three days acknowledged that his

8

brace had been returned.  As for physical therapy, Campbell did not deny him those services but instead informed him that he needed a referral from an in-house medical provider.  She advised Murphy to go to sick calls, where he presumably could get the necessary referral for physical therapy if appropriate.  Campbell also understood that Murphy was in the infirmary at the time, where he had access to healthcare staff who could make that referral.  Lastly, Campbell confirmed that Murphy had an upcoming appointment with his external orthopedist.  In all, a reasonable factfinder could not conclude based on this record that Campbell's actions in response to Murphy's complaints were "so inadequate as to shock the conscience, let alone that any deficiency was intentional."  See Torraco, 923 F.3d at 234 (cleaned up).  Rather, the only reasonable inference is that Campbell's response was "within the realm of reason and made in good faith," which precludes a finding of deliberate indifference.  See Battista v. Clarke, 645 F.3d 449, 454 (1st Cir. 2011).

The same is true for Domenici's responses to Murphy's May 2017 request slips.  When Murphy complained on May 7 that he could not get on the top bunk because of his leg, Domenici extended him bottom bunk privileges the next day.  As for Murphy's complaint that his ankle was not healing correctly, Domenici confirmed that he had two external medical appointments

9

scheduled within the next month -- a CT scan of his leg on June 2 and an orthopedic consultation on June 8. Domenici, however, followed prison protocol in not informing Murphy about those appointments. Thus, Domenici did not ignore Murphy's complaints but made sure that there was a course of treatment in place for his injury. Cf. Feeney, 464 F.3d at 162 (when "plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute . . . falls short of alleging a constitutional violation") (cleaned up).

To the extent Murphy faults Domenici for not expediting his medical appointments given his complaint, he offers no evidence that she was responsible for scheduling appointments or that she was aware that waiting until the scheduled appointments to address Murphy's concerns would create a substantial risk of serious harm to him. Cf. Norwood v. Ghosh, 723 F. App'x 357, 363-64 (7th Cir. 2018) (affirming grant of summary judgment on deliberate indifference claim to prison doctor despite nine-month delay in scheduling inmate's surgery because there was no evidence to hold that doctor responsible for delay); Runkle v. Kemen, 529 F. App'x 418, 425 (6th Cir. 2013) (similar). Further, given the evidence that Murphy had three scheduled appointments with his orthopedist in a span of four months and a lack of evidence that this provider had ordered more frequent follow-up appointments, the record does not support an inference

10

that the month-long delay between Murphy's request and the June appointment was due to Domenici's deliberate indifference. Cf. Feeney, 464 F.3d at 162-63 (affirming grant of summary judgment to defendants despite twenty-two-month delay in providing inmate with orthopedic footwear where there were ongoing efforts to address inmate's concerns, including multiple appointments with external medical providers); Rhines v. Bledsoe, 388 F. App'x 225, 227 (3d Cir. 2010) (one-month delay in getting MRI for inmate's knee injury did not constitute deliberate indifference); Griffin v. Betancourt, No. 19-CV-4670, 2019 WL 5901497, at *4-5 (E.D. Pa. Nov. 8, 2019) (allegation of at least five-week delay in seeing neurologist did not support plausible deliberate indifference claim).

Domenici's handling of Murphy's May 31 request slip likewise cannot support a deliberate indifference claim.  This time, Murphy informed her that his leg brace had been confiscated, that he had not been receiving physical therapy despite his orthopedist's recommendation a few months prior, and that he wanted surgery to fix his leg.  In turn, Domenici confirmed that Murphy's external medical appointments were scheduled to occur within a week.  Because she still could not inform him about those appointments due to safety and security concerns, Domenici decided to wait for the appointments to take place before responding.  Within a week of those appointments,

11

Domenici learned that both surgery and physical therapy had been ordered and moved Murphy to the infirmary, where he received physical therapy and other treatment while awaiting surgery. This record does not support a reasonable inference that Domenici was subjectively aware that her delay in responding would create a substantial risk of serious harm to Murphy, or that she deliberately disregarded such a risk, even if it did exist.  Cf. Thomas v. Poveda, 518 F. App'x 614, 620-21 (11th Cir. 2013) (two-month delay between defendant's formal request for physical therapy and when therapy was recommended insufficient to "support a conclusion that the delay was due to more than mere negligence, that the therapy was needed on an emergency basis, or that the delay worsened [inmate's] condition"); Adams v. Wellpath of Me., No. 2:20-CV-00424-NT, 2021 WL 3056841, at *2, *9 (D. Me. July 20, 2021), R. & R. adopted, 2021 WL 4144738 (D. Me. Sept. 10, 2021) (at least two-month delay in scheduling physical therapy after inmate's orthopedic surgeon prescribed it did not amount to deliberate indifference, despite inmate's frequent requests).

Finally, even if Murphy requested that Domenici take immediate action on his complaint that his prescription for Naproxen has expired, the record lacks any facts permitting the inference that Murphy was exposed to a substantial risk of serious harm as a result of the one-week delay between his

12

request and his doctor's visit, when presumably he could get the prescription renewed, or that the delay somehow constituted an act of deliberate indifference.  Murphy did not complain about severe, debilitating pain such that more immediate action would be required.  Instead, he complained about experiencing pain when he would bear weight on his leg, without informing Domenici about the frequency or severity of his pain.  Under these circumstances, the delay amounted, at most, to professional negligence, which is insufficient to prove a constitutional violation.  See Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

In sum, the summary judgment record does not show the degree of egregious conduct that would support a deliberate indifference claim against either Campbell or Domenici.  Accordingly, they are entitled to summary judgment on the Eighth Amendment claims.

**B.   State Law Claims**

Defendants argue that they are immune from liability on the state law claims for intentional and negligent infliction of emotional distress.  The viability of the state law claims rises or falls with the viability of the Eighth Amendment claims.

Chapter 99-D:1 of the New Hampshire Revised Statutes protects state officers and employees from liability "for decisions, acts or omissions that are: (1) made within the scope

13

of their official duties while in the course of their employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Farrelly v. City of Concord, 168 N.H. 430, 440 (2015) (cleaned up).  The New Hampshire Supreme Court has defined "wanton conduct" as "malicious or unreasonable disregard for [another's] safety while being utterly indifferent to the consequences." Franciosa v. Hidden Pond Farm, Inc., 171 N.H. 350, 360 (2018) (construing "wanton" for purposes of immunity provided by N.H. Rev. Stat. Ann. § 508:19).  Reckless conduct is "conduct evincing disregard of or indifference to consequences under circumstances involving danger to life or safety of others, although no harm was intended." Kukesh v. Mutrie, 168 N.H. 76, 83 (2015) (cleaned up).  I agree with my colleagues that this standard is functionally equivalent to the deliberate indifference standard for Eighth Amendment claims.  See Est. of Sacco v. Hillsborough Cnty. House of Corr., 2021 DNH 086, 2021 WL 2012639, at *13 (D.N.H. 2021); Beaulieu v. N.H. Governor, 2018 DNH 134, 2018 WL 3193234, at *13 (D.N.H. 2018).

Murphy does not dispute that defendants' actions were made within the scope of their employment and that they were discretionary.  For the same reasons that Murphy cannot show that defendants were deliberately indifferent to his medical needs, he cannot show that their conduct was wanton or reckless.

14

Accordingly, official immunity precludes Murphy's state law claims.

## IV. CONCLUSION

Defendants' motion for summary judgment (Doc. No. 62) is granted. The clerk of court shall issue judgment and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

April 8, 2022

cc: Counsel of Record